UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

EDITH SUZANNE ALLEN, )
)
    Plaintiff, )
)
v. ) No. 3:10-00077
) JUDGE HAYNES
)
BELLSOUTH TELECOMMUNICATIONS, )
INC., and AT&T UMBRELLA BENEFIT )
PLAN NO. 1, )
)
    Defendants. )

# M E M O R A N D U M

Plaintiff, Edith Suzanne Allen, filed this action under the Americans with Disabilities Act, 42 U.S.C. § 12112(a) ("ADA") and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 et seq. ("THRA") against the Defendants, BellSouth Telecommunications, Inc. ("BellSouth") and AT&T Umbrella Plan No. 1 (the "AT&T Plan"). Plaintiff's claims are that the Defendants discriminated against her on the basis of her disability. After the Defendants filed their answer, the parties proceeded with discovery.

Before the Court are the Defendants' motion for summary judgment (Docket Entry No. 25) and Plaintiff's motion for summary judgment (Docket Entry No. 29). In their motion, Defendants contend, in sum: (1) that Plaintiff does not have a substantial impairment to a major life activity; (2) that Plaintiff was not a "qualified" individual with a disability under the ADA; (3) that Plaintiff's claims are barred by judicial estoppel, *res judicata* and collateral estoppel; (4) that Plaintiff did not request an accommodation for her alleged disability; (5) that an open-ended leave of absence is not

a reasonable accommodation; (6) that Plaintiff neither suffered an adverse employment action nor was she constructively discharged; and (7) Plaintiff's claims associated with the denial of severance have been abandoned. In her motion, Plaintiff contends, in essence, that she is disabled within the meaning of the ADA; that she was qualified to perform the requirements of her job with or without reasonable accommodations and she suffered an adverse employment decision because of her disability.

For the reasons set forth below, the Court concludes that based upon the undisputed facts Plaintiff has failed to show that she is disabled. Thus, the Defendants' motion for summary judgment should be granted, and Plaintiff's motion for summary judgment should be denied.

## I. FINDINGS OF FACT[1]

Plaintiff began working for BellSouth/AT&T on June 14, 1976. (Docket Entry No. 34, Plaintiff's Response to Defendants' Statement of Facts, at ¶ 1). In 2002 Plaintiff was diagnosed with depression. (Docket Entry No. 35, Defendants' Response to Plaintiff's Statement of Facts, at ¶ 6). Plaintiff worked many years as an area manager. (Docket Entry No. 25, Exhibit C, Plaintiff Deposition at pp. 8-13). Plaintiff's area covered the entire state of Tennessee. Id. at pp. 10-11, 26. As a result of a corporate merger, BellSouth became an affiliate of AT&T Inc. at the end of 2006. (Docket Entry No. 34, at ¶ 2). On or around late 2006 or early 2007, Plaintiff was given new areas

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Because there are not any material factual disputes, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

of responsibility in Tennessee, Kentucky, North Carolina and South Carolina. (Docket Entry No. 25, Exhibit C, Plaintiff Deposition at pp. 25-26; Docket Entry No. 35, at ¶¶ 4-5).

In June 2007, Plaintiff sought benefits under the merger severance plan for management employees that was implemented to compensate BellSouth employees who lost their jobs as a result of the AT&T merger. (Docket Entry No. 34, at ¶ 3). In her "Notice of Good Reason" to terminate her employment and receive severance benefits, Plaintiff stated that she could not travel with her new job responsibilities because she was the sole caretaker for her 88-year-old mother, who was in poor health. Id. at ¶ 4; Docket Entry No. 28, Killian Declaration, Exhibit B. Plaintiff included a letter from James Lancaster, Plaintiff's primary care physician, who opined that Plaintiff, as her mother's primary caregiver, could not leave her mother alone at night for overnight travel because of her mother's medical problems. Id. at ¶ 5; Docket Entry No. 28, Killian Declaration, Exhibit B at 6. Plaintiff's request for severance benefits was denied, and she submitted another claim that was also rejected on October 8, 2007. Id. at ¶ 8.

In a December 18, 2007 email addressed to the chief executive officer and two vice presidents, Plaintiff complained about her new position since the merger and that because of her mother's age and declining health Plaintiff needed a severance package so that she could look after her mother full time. (Docket Entry No. 24, Plaintiff Deposition at p. 102, Exhibit 10). In response Plaintiff was encouraged to seek the resources and benefits available to her as an employee that would provide her with the flexibility for her to care for her mother while remaining with the company. Id., Exhibit 11.

On February 12, 2008, Plaintiff met with Cynthia Fry, a licensed clinical social worker and member of the Academy of Certified Social Workers, who was the employee assistance program

("EAP") counselor for BellSouth/AT&T employees. (Docket Entry No. 35, at ¶ 7; Docket Entry No. 23, Fry Deposition at pp. 8, 10, 16). Fry opined that Plaintiff suffered from severe depression. (Docket Entry No. 23, Fry Deposition at p. 17). Fry stated that Plaintiff scored approximately a 30 on the Global Assessment Functioning ("GAF") scale in February 2008. Id. at p.18. A GAF score of 21 to 30 means an "inability to function." Id. Plaintiff's symptoms were that she had an inability to concentrate, was indecisive, felt helpless and hopeless, and lacked interest in things that she enjoyed. Id. at p. 17. Plaintiff also had difficulty controlling negative thoughts, felt empty, had a loss of appetite with residual weight loss, was irritable, was fatigued and was anxious and fearful. Id.

Plaintiff did not report to work on February 12, 2008, and went on approved medical leave for one week. (Docket Entry No. 24, Plaintiff Deposition at p. 45). On February 12, 2008, the AT&T Integrated Disability Service Center initiated a claim for short term disability benefits on Plaintiff's behalf. (Docket Entry No. 35, at ¶ 9). On February 18, 2008, Fry recommended that Plaintiff take time off work "in order to stabilize." Id. at ¶ 11; Docket Entry No. 25, Exhibit B at SED 58. In a February 25, 2008 letter to BellSouth/AT&T, Dr. Lancaster also recommended that Plaintiff take time-off from work for treatment for her depression. Id. at ¶ 12. Dr. Lancaster diagnosed Plaintiff with moderately severe depression and noted his intent to notify her employer of Plaintiff's continued need for work leave. Id. at ¶ 13. On February 28, 2008, Plaintiff visited Dr. Lucas Van Orden, a psychiatrist. Id. at ¶ 14. Dr. Van Orden's impression was that Plaintiff was "emotionally unstable and not competent" and unable to return to work, but could not project a "return-to-work date." Id. at ¶ 15; Docket Entry No. 25, Exhibit B at SED 0024, 0020. Dr. Van Orden assigned Plaintiff a GAF of 30. Id. at ¶ 16.

On March 5, 2008, Sedgwick Claims Management Services, Inc., the third-party claims administrator for the AT&T Plan, denied Plaintiff's claim for disability benefits. (Docket Entry No. 34, at ¶¶ 13-14). Plaintiff appealed on April 1, 2008, but Sedgwick denied Plaintiff's claim on May 8, 2008, issuing a corrected final denial letter on May 21, 2008. Id. at ¶ 15. Plaintiff's manager, Norberta Noguera, then directed Plaintiff to return to work by May 27, 2008. (Docket Entry No. 35, at ¶ 20). Plaintiff elected to retire on May 30, 2008. (Docket Entry No. 34, at ¶ 17).

Plaintiff continued to see Fry, and according to Fry, Plaintiff had recovered from her illness and was able to return to work in late July or early August 2008. (Docket Entry No. 35, at ¶ 27). Dr. Lancaster also released Plaintiff to return to work. (Docket Entry No. 24, Plaintiff Deposition at p. 55). Plaintiff stated that she felt better in August 2008 and that her depression did not severely limit any major life activities from that point forward. Id. at pp. 56-57, 120-21. Plaintiff's most recent medical records do not indicate a current need for psychological counseling for depression. (Docket Entry No. 35, at ¶ 29).

On September 17, 2008, Plaintiff filed an ERISA action against the AT&T Plan seeking short term disability benefits. (Docket Entry No. 34, at ¶ 19). On October 1, 2008, Plaintiff filed a charge of discrimination with the EEOC, alleging sex, age, and disability discrimination. Id. at ¶ 20. In January 2009, Fry discharged Plaintiff from treatment, determining that Plaintiff's GAF to be 75. (Docket Entry No. 35, at ¶¶ 25-26). A GAF score of 71 to 80 refers to "milder transient symptoms." (Docket Entry No. 23, Fry Deposition at p. 18). On July 29, 2009, the district court awarded short term disability benefits to Plaintiff. (Docket Entry No. 35, at ¶ 24).

## II. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the

party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported

motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.</u>
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.</u> If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.</u> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

> It is likewise true that:
> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

9

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial

court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

The ADA was enacted to counterbalance society's historic tendency to isolate and segregate individuals with disabilities. 42 U.S.C. § 12101. The ADA serves as a mechanism to level the playing field so that individuals living with disabilities are treated fairly and afforded equal opportunity within the workplace, among other areas. Id. Thus, the ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).

To recover on a claim of discrimination under the ADA, a plaintiff must show that: (1) she is an individual with a disability; (2) she is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) she was either denied a reasonable accommodation for her disability or she suffered an adverse employment action solely because of

her disability. Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir. 1996); Smith v. Ameritech, 129 F.3d 857, 866 (6th Cir. 1997). "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A plaintiff may prove that she was discriminated against based upon her disability either through direct or indirect evidence. Monette, 90 F.3d at 1178.

The Sixth Circuit has stated that if a plaintiff presents direct evidence of disability discrimination:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 453 (6th Cir. 2004) (quoting Monette, 90 F.3d at 1186).

However, where a plaintiff seeks to establish discrimination through indirect evidence, courts employ the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden-shifting approach so that the

> plaintiff may establish a prima facie case of discrimination by showing that: (1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. The defendant must then offer a legitimate explanation for its action. If the defendant satisfies this burden of production, the plaintiff must introduce evidence

> showing that the proffered explanation is pretextual. Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times.

Hedrick, 355 F.3d at 453 (quoting Monette, at 1186-87); Torok v. Gibralter Veterinary Hosp., Inc., 442 F. Supp.2d 438, 457 (E.D. Mich. 2006) ("Whether Plaintiff proceeds under the 'direct evidence' or the McDonnell Douglas burden-shifting mode of analysis, she cannot succeed on an ADA claim of disability discrimination absent a showing that she is 'disabled' within the meaning of the statute.").

An individual is disabled under the ADA if: (1) she has a physical or mental impairment that substantially limits one or more of her major life activities; (2) she has a record of such impairment; or (3) she is regarded as having such an impairment. 42 U.S.C. § 12102(2). "'If [an employee's] condition does not meet one of these categories even if he was terminated because of some medical condition, he is not disabled within the meaning of the Act. The ADA is not a general protection for medically afflicted persons.'" Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 703 (6th Cir. 2008) (citation omitted).

Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). A major life activity is substantially limited if the employee is:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or

> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

Id. at § 1630.2(j)(i), (ii). In the context of working, a plaintiff would be required to show an inability to work in a broad class of jobs, not just "one type of job, a specialized job, or a particular job of choice." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491, 492 (1999); 29 C.F.R. § 1630.2(j)(3)(I).

In Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002), the Supreme Court directed that for purposes of qualification under the ADA's definition of disabled, the terms "substantially" and "major" must be "interpreted strictly."[2] The Court stated that "Merely having an impairment does not make one disabled for purposes of the ADA." Id. at 195. For an impairment to be a substantial limitation of a major life activity, the impairment must "prevent[] or severely restrict[] [an] individual from doing activities that are of central importance to most people's daily lives." Id. at 198. Further, "[t]he impairment's impact must also be permanent or long term." Id. Thus, "any impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation under the [ADA]." Mahon v. Crowell, 295 F.3d 585, 590-91 (6th Cir. 2002).

Under the ADA, the disability issue must be determined on a case-by-case basis. See Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566, 567 (1999) (for an ADA claim, the ADA plaintiff must "prove a disability by offering evidence that the extent of the limitation in terms of their own experience . . . is substantial"). Moreover, "the determination of whether an individual is

---

[2]The Court notes that the "ADA Amendments Act of 2008" ("ADAAA"), that became effective January 1, 2009, Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008), "does not apply retroactively to govern conduct occurring before the Act became effective." Milholland v. Sumner County Bd. of Educ., 569 F.3d 562, 565 (6th Cir. 2009). Thus, because the alleged conduct occurred before the ADAAA became effective the Court is to apply the ADA law that was in effect at the time of the alleged conduct.

14

disabled should be made with reference to measures that mitigate the individual's impairment." Sutton, 527 U.S. at 475.

Plaintiff contends that she is substantially limited in the major life activity of working and that her depression affected other major life activities as well. (Docket Entry No. 5, Amended Complaint, at ¶¶ 11, 13). Yet, the evidence demonstrates that Plaintiff's impairment's impact was not permanent or long term. According to Fry, Plaintiff had recovered from her illness and was able to return to work in late July or early August 2008. Dr. Lancaster also released Plaintiff to return to work. Plaintiff also stated that she felt better in August 2008 and that her depression did not severely limit any major life activities. Moreover, Plaintiff's most recent medical records do not indicate a current need for psychological counseling for depression. In Sutton, the Supreme Court stated, "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity. To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limi[t]' a major life activity." 527 U.S. at 482-83. See Roush v. Weastec, Inc., 96 F.3d 840, 843 (6th Cir. 1996) ("Generally, short-term, temporary restrictions are not substantially limiting.").

Based on this evidence, the Court concludes that Plaintiff fails to show that she was disabled as defined under the ADA.[3]

Further, Plaintiff is unable to show that she was "otherwise qualified." Plaintiff was not released by Fry and Dr. Lancaster to return to work at the time she retired on May 30, 2008. "An employee who suffers an injury or illness and is not medically released to return to work is not

---

[3]Plaintiff does not contend that she has a record of a disability or was regarded as disabled.

'qualified' under the ADA." Pagel v. Premier Mfg. Support Services, Inc., No. 1:04-00084, 2005 WL 1785178, at *8 (M.D. Tenn. July 21, 2005) (citing Roberson v. Cendant Travel Servs., Inc., 252 F. Supp.2d 573, 583 (M.D. Tenn.2002)). Thus, Plaintiff fails to show that she was "otherwise qualified." Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1047 (6th Cir. 1998) ("[B]ecause she was not released by her doctor to return to work, she has not met the second requirement that she be qualified to perform the essential functions of the job.").

Without a viable federal claim, the Court declines to exercise supplemental jurisdiction over the state law claim. See e.g., Wal-Juice Bar, Inc. v. Elliot, 899 F.2d 1502, 1504 (6th Cir. 1990).

Accordingly, for theses reasons the Court concludes that Defendants' motion for summary judgment (Docket Entry No. 25) should be granted and Plaintiff's motion for summary judgment (Docket Entry No. 29) should be denied except that Plaintiff's state law claim should be dismissed without prejudice.

An appropriate Order is filed herewith.

**ENTERED** this the 12th day of May, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge